U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 2 4 2006

ROBERT H. SHE[MWELL] CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **MELANIE BROUSSARD** | **CIVIL ACTION NO. 05-0461** |
| VS. | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

*Background*

Born on February 6, 1962, Melanie Broussard ("Broussard") is a 44-year-old claimant with a tenth-grade education. (Tr. 24). Broussard has worked in the past as a cashier, stocker, and baker at a grocery store, and as a clothes presser, buttoner, and bagger at a dry cleaning business. (Id.).

Broussard filed an application for disability insurance benefits and supplemental security income on May 17, 2001, alleging disability as of November 13, 2000 due to eczema and a herniated disc. Her application was denied initially and on reconsideration, and an administrative hearing was held on February 7, 2003. In an opinion dated April 4, 2003, the ALJ found that Broussard retains the residual functional capacity to perform substantially all of the full range of light work. (Tr. 32). The Appeals Council denied review, (Tr. 5-7), making the ALJ's decision the final decision of the Commissioner from which Broussard now appeals.

Broussard's wage records show that she remains insured for disability benefits through the date of the ALJ's decision. (Tr. 24).

### *Assignment of Errors*

Broussard raises two errors on appeal: (1) The ALJ failed to properly evaluate the severity of all of her impairments; and (2) the ALJ erred in assessing her residual functional capacity and improperly relied upon the Medical-Vocational Guidelines at Step 5 in concluding that she is not disabled.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that, although Broussard suffers from the severe impairment of degenerative disc disease, she retains the residual functional capacity to perform the full range of light work and is, therefore, not disabled. (Tr. 31-32).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

A. **Improper Severity Standard and Findings**

Broussard contends that the ALJ failed to properly evaluate the severity of all of her impairments. Specifically, Broussard argues that the ALJ applied an improper severity standard, understated the effects of Broussard's low back impairment, and failed to consider the effects of her obesity and eczema on her ability to work.

In the Fifth Circuit, courts must adhere to the standard set forth in <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir.1985) in assessing severity of an impairment. In <u>Stone</u>, the Fifth Circuit declared that severity of an impairment must always be determined with regard to an individual's *ability to perform substantial gainful employment,* and cannot be based on medical severity alone. Moreover, the Fifth Circuit articulated the correct severity standard as:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

<u>Stone</u>, 752 F.2d at 1101. The court further stated that "[W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." <u>Id.</u> at 1106.

In the instant case, the ALJ concluded that "[t]he claimant's degenerative disc disease of the lumbar spine is a severe impairment *within the meaning of the Regulations.*" (Tr. 24) (emphasis added). Considering that the ALJ did not make reference to the severity standard set forth in <u>Stone</u>, and did not refer to the correct construction that the Fifth Circuit applies to the severity regulation, the undersigned concludes that the ALJ applied an improper severity standard. Nevertheless, the undersigned concludes that this fact alone does not require reversal of the ALJ's decision, because the ALJ did not stop the disability analysis at Step 2 by finding that Broussard does not have a severe impairment. Rather, the ALJ proceeded to the next step in the sequential evaluation to determine whether Broussard's impairments affect her ability to work. The Fifth Circuit has already declined to extend the <u>Stone</u> decision to cases that were not

decided at Step 2 on the basis of non-severity. See, e.g., Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2). Therefore, this claim is without merit.

Nevertheless, the undersigned concludes that the ALJ failed to properly evaluate the effects of Broussard's obesity and eczema on her ability to work, and for this reason, the case should be remanded.

### *Obesity*

Obesity remains a factor to be considered in determining whether an individual is disabled. Social Security Ruling (SSR) 02-01p states:

> We may also find that obesity, by itself, is medically equivalent to a listed impairment (or, in the case of a child applying under title XVI, also functionally equivalent to the listings). For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. (See question 8 for further discussion of evaluating the functional effects of obesity, including functional equivalence determinations for children applying for benefits under title XVI.)
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.[1]

---

[1] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20

> \* \* \*
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.
>
> \* \* \*
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

The record shows that Broussard is 5 feet tall and weighed 201 lbs. in December 2001. (Tr. 165-66). Dr. Eric Frischhertz, Jr., an internist who examined Broussard at the request of Disability Determinations Services on December 8, 2001, reported that Broussard is "mildly obese." (Tr. 165). In evaluating her residual functional capacity, however, the ALJ did not even mention Broussard's obesity in his decision.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity, and he must explain his decision. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). In the instant case, the ALJ failed to address the effect of Broussard's obesity on her ability to perform routine movement and necessary physical activity within the work environment.

In addition to the lack of evidence concerning the effect of Broussard's obesity on her ability to perform physical activities, the record is devoid of information concerning the combined effects of her obesity and her other impairments. "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'" Loza

---

CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

v. Apfel, 219 F.3d 378, 399 (5th Cir. 2000), citing Fraga v. Bowen, 810 F.2d 1296, 1305 (5th Cir.1987).

In June 1999, an MRI of Broussard's lumbar spine showed a lateral and far lateral L3-L4 disc protrusion, which appeared to narrow the L2-L4 neural foramina and was said to possibly encroach upon the existing L3 nerve root. (Tr. 112). At L4-L5, the MRI showed disc dessication and mild facet arthrosis. (Id.). By January 2001, another lumbar MRI continued to show disc dessication at L4-L5 and evidence of a protrusion at L3-L4 and L4-L5 which was narrowing the nerve root foramina. (Tr. 139). In May 2001, clinical findings included a positive Babinski sign[2] in Broussard's lower extremities bilaterally. (Tr. 119). On December 8, 2001, Dr. Frischhertz reported that Broussard had evidence of radiculopathy on examination, with decreased strength and decreased range of motion, resulting in a "decreased functional status." (Tr 165-66). Although it is true that Broussard is not considered to be a surgical candidate, there is objective medical evidence supporting her complaints of severe lower back pain.

Considering the foregoing, the extent of Broussard's "decreased functional status" is not clear, and given the lack of clarity, the undersigned concludes that the ALJ should have referred Broussard back to Dr. Frischhertz for an opinion as to whether Broussard's obesity, either alone or in combination with her other conditions, meets or equals a listed impairment or otherwise prohibits her from maintaining gainful employment.

Remand is appropriate upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court."

---

[2] A positive Babinski's sign is indicative of an upper motor neuron lesion affecting the lower extremity in question.

Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981). Considering that the record does not contain information regarding the effects of Broussard's obesity on her ability to work, remand is appropriate in this case.

### *Eczema*

Broussard also contends that her eczema is disabling. Because the record suggests that Broussard's eczema is well-controlled with medication, the undersigned disagrees. On April 11, 2001, examination of Broussard's hands showed multiple small vesicles between the digits and an area of dry red skin. (Tr. 134). Broussard was diagnosed with eczema and given a steroid cream. Broussard's hands were much improved on April 30, 2001, and progress notes that date state that she was "responding to steroids." (Tr. 133). On September 24, 2001, a clinic report states that Broussard's eczema had recurred. (Tr. 129). Broussard was treated with a tapering dose of Prednisone and was told to continue using steroid cream. At Dr. Frischhertz's exam on December 8, 2001, Broussard's hands were reported to be normal. (Tr. 165).

Considering the foregoing, the undersigned concludes that Broussard's episodic eczema is not disabling. No doctor who has examined her has opined that she cannot work because of her eczema. Rather, the medical reports suggest that Broussard has responded well to steroid treatment. Considering the foregoing, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Broussard's eczema is not disabling.

### 2. **Residual Functional Capacity**

Broussard contends that the ALJ improperly assessed her residual functional capacity and improperly relied upon the Medical-Vocational Guidelines in finding that she is not disabled.

When a claimant has nonexertional impairments that significantly affect his residual functional capacity, the ALJ may not rely exclusively on the Medical-Vocational Guidelines in determining whether there is other work available that the claimant can perform). Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). Nevertheless, when the claimant's nonexertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform. Fraga, 810 F.2d at 1304.

It is well-settled that obesity can cause both exertional and nonexertional limitations. As the court stated in Social Security Ruling 02-1p:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. *It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.* The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

In the instant case, Dr. Frischhertz reported that Broussard had point tenderness over the lumbar spine and the paraspinous muscles as well as the SI joint. (Tr. 165). He also reported that Broussard had decreased strength and decreased range of motion, suggesting that she might have nonexertional limitations in the areas of climbing, balancing, stooping, kneeling, crouching, and/or crawling. Considering the foregoing, and for the reasons already given in this report, the undersigned concludes that the ALJ's assessment of Broussard's residual functional capacity is not supported by substantial evidence in the record, inasmuch as the ALJ failed to consider Broussard's obesity on her ability to work. The undersigned further concludes that, given Dr.

Frischhertz's findings, the ALJ should not have relied solely on the Guidelines in finding that Broussard is not disabled.

*Conclusion*

Considering the foregoing, **IT IS RECOMMENDED** that the ALJ's decision be **REVERSED AND REMANDED** for further proceedings in accordance with these findings. On remand, the ALJ shall order a follow-up consultative examination with Dr. Eric Frischhertz, Jr. to determine whether Broussard's obesity is a severe impairment and to evaluate the effects of Broussard's obesity on her ability to perform routine movement and necessary physical activity within the work environment. The ALJ shall also order that Dr. Frischhertz to complete an RFC assessment, taking into account all of Broussard's impairments. Finally, the ALJ shall obtain the testimony of a vocational expert to assist in his determination of whether Broussard is disabled.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

11

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on March _____, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)